AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

Northern District of California

FILED
19 October 2026
Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

United States of America
v.
Hector REYES-MARTINEZ

*Defendant(s)*

Case No. 3:26-mj-71365 MAG

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of September 23, 2026 in the county of San Francisco in the Northern District of California, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 21 U.S.C. § 841(a)(1), (b)(1)(C) | Possession with the intent to distribute a mixture or substance containing a detectable amount of Fentanyl. |

This criminal complaint is based on these facts:

See attached affidavit of Jeffrey Ospital, SFPD Officer and Drug Enforcement Agency TFO

☑ Continued on the attached sheet.

/s/
*Complainant's signature*

Jeffrey Ospital, DEA TFO
*Printed name and title*

Approved as to form October 15, 2026
AUSA *Jillian Kennedy*

Sworn to before me via telephone.

Date: 10/15/2026

*Judge's signature*

City and state: San Francisco, California

Honorable ALEX G. TSE, U.S. Magistrate Judge
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ARREST WARRANT AND CRIMINAL COMPLAINT

I, Jeffrey T. Ospital, a police officer with the San Francisco Police Department, serving as a Task Force Officer with the Drug Enforcement Administration, having been duly sworn, hereby depose and state as follows:

## INTRODUCTION

1. I make this affidavit pursuant to Federal Rules of Criminal Procedure 3, 4, and 4.1 in support of a Criminal Complaint and Arrest Warrant charging **Hector Reyes Martinez,** (hereafter "REYES MARTINEZ"), with distribution of a mixture or substance containing a detectable amount of fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C), on or about September 23, 2026, in San Francisco, California, in the Northern District of California.

## SOURCES OF INFORMATION

2. The facts in this affidavit come from my personal observations, my training and experience, information from records and databases, and information obtained from other agents, officers, and witnesses. Where statements made by other individuals (including other Special Agents and law enforcement officers) are referenced in this Affidavit, such statements are described in sum and substance and in relevant part. Similarly, where information contained in reports and other documents or records is referenced in this Affidavit, such information is also described in sum and substance and in relevant part.

3. Because this Affidavit is submitted for the limited purpose of establishing probable cause for a criminal complaint and arrest warrant, I have not included every fact known to me about this case. Rather, I have set forth only the facts that I believe are necessary to support probable cause for a criminal complaint and arrest warrant. My understanding of the facts and circumstances of the case may evolve as the investigation continues.

## AFFIANT BACKGROUND

4. I am a Police Officer with the San Francisco Police Department ("SFPD") and have been a sworn peace officer in the State of California since June of 2016. I have been

assigned as an officer / investigator at the SFPD Narcotics Unit since March 2023, and prior to that was a patrol officer assigned to Central Police Station. I am a sworn Task Force Officer ("TFO") for the Drug Enforcement Administration ("DEA"). I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7). I am empowered by law to conduct investigations, to execute search warrants, and to make arrests for offenses of Federal law, including drug offenses.

5. In the police academy and at SFPD Detective School, I received narcotics-related and narcotics investigations training, covering all aspects of drug investigations, including identification of controlled substances, physical surveillance, utilization of confidential sources, interview techniques, undercover operations, and the general operation of drug trafficking organizations. During my career, I have received continuing education training in law enforcement investigations, including training on drug trafficking investigations and specifically, fentanyl investigations. I have attended training covering various aspects of narcotics investigation including but not limited to drug identification, informant management, undercover operations, search warrant preparation, drug manufacturing, drug overdose homicides, and narcotics and human trafficking investigations.

6. During my employment at SFPD, I have participated in over a hundred controlled substance sale investigations. I have discussed the methods and practices used by drug traffickers with other law enforcement officers. I have also had conversations with drug users and sellers over the course of my career which have provided me further insight to the world of narcotics trafficking and use. I have also participated in many aspects of drug investigations including, but not limited to, undercover operations, records research, physical surveillance, and the execution of federal and state search warrants and arrest warrants that resulted in the arrest of suspects and seizure of controlled substances. I have reviewed numerous reports related to drug investigations and arrests. I have also prepared search warrants to seize weapons and narcotics.

7. Based on my training and experience, as well as conversations I have had with drug dealers, and experienced law enforcement officers, I have become familiar with the

practices of narcotics traffickers. Specifically, I am familiar with methods that traffickers use to smuggle, safeguard, transport, and distribute narcotics, and to collect and launder the proceeds of drug trafficking.

8. I have also had discussions with other law enforcement officers and in addition to training about the packaging and preparation of narcotics, the methods of operation, and security measures that are often employed by narcotics traffickers. I have examined documentation of various methods in which fentanyl and other illicit drugs are smuggled, transported, possessed with intent to distribute, and distributed. I am familiar with the appearance of marijuana, heroin, cocaine, cocaine base, methamphetamine, fentanyl, and other controlled substances and regularly handle and inspect controlled substances in the course of my duties.

9. I am familiar with the facts and circumstances of the investigation through my participation in it based on several investigative techniques, including discussions with agents and officers from other law enforcement agencies, and review of records and reports relating to the investigation. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the statement is not being recounted verbatim but instead only in substance and in part. Facts not set forth herein, or in any attached exhibits, are not being relied on in reaching my conclusion that the requested order should be issued. Nor do I request that this Court rely on any facts not set forth herein in reviewing this application.

## APPLICABLE STATUTE

10. **Distribution of Controlled Substance.** Under Title 21, United States Code, Section 841(a)(1), (b)(1)(C) it is unlawful for any person to knowingly distribute a federally controlled substance. Under 21 C.F.R. § 1308.12, fentanyl is a Schedule II controlled substance.

## STATEMENT OF PROBABLE CAUSE

11. On or about September 23, 2026, REYES MARTINEZ was arrested by San Francisco Police Department (SFPD) officers near the area of Larkin Street & Ellis Street in San Francisco, California, in the Northern District of California. Based on the facts described below, there is probable cause to believe that REYES MARTINEZ violated 21 U.S.C. § 841(a)(1),

(b)(1)(C), based on his distribution of a mixture or substance containing a detectable amount of fentanyl to an undercover SFPD officer.

12. At approximately 11:40 PM on or about September 23, 2026, SFPD law enforcement personnel conducted a buy/bust operation in the Tenderloin Police District of San Francisco. A "buy/bust" operation is a law-enforcement technique where an undercover police officer purchases narcotics or a controlled substance from a drug dealer in exchange for U.S. currency. Once the exchange is made, law enforcement officers then arrest the dealer of the narcotics. The area of Larkin Street & Ellis Street in which the "buy/bust" operation occurred is well known to officers as an area where narcotics are illegally bought, sold, and consumed, particularly during the night hours. This drug activity results in multiple calls from citizens about drug dealing and the consumption of illegal drugs in the area.

13. An SFPD officer acting in an undercover capacity ("UC"), walked northbound on Larkin Street from Ellis Street on the east sidewalk. As the UC walked up Larkin Street, he observed a male subject, REYES MARTINEZ, wearing a black hooded sweatshirt with the hood overhead and a black colored mask face covering. As the UC walked past REYES MARTINEZ, the UC stated, "Iso," a street-term commonly used for fentanyl. REYES MARTINEZ then stopped, turned and looked in the direction of the UC and questioned, "How much?" The UC replied, "Twenty," indicating the UC wanted to purchase $20.00 worth of fentanyl. The UC observed REYES MARTINEZ kneel in front of a planter box positioned on Larkin Street and produce a small black colored baggie, which contained a white colored rock-like substance. REYES MARTINEZ then broke off several small pieces from the rock-like substance and placed them into the palm of the UC. The UC handed REYES MARTINEZ one $20.00 note of U.S currency (marked city funds) in exchange for the rock-like substance. Based on their training and experience, the UC recognized the substance as suspected fentanyl.

14. Once in possession of the suspected fentanyl, the UC walked away from the area and gave the pre-designated successful "buy" signal to the close cover officers. Close cover officers coordinated with arrest team members who ultimately located REYES MARTINEZ near

706 Larkin Street and placed him under arrest. Upon initial contact, arresting officers located an approximately 10.5-inch fixed blade knife concealed within REYES MARTINEZ'S pants. As arresting officers stood REYES MARTINEZ up, suspected fentanyl dropped from his hands and onto the sidewalk. Officers seized the suspected fentanyl discarded by REYES MARTINEZ and the fixed blade knife as evidence.

15. Close cover officers alerted the arresting officers that REYES MARTINEZ made a throwing motion as uniformed officers approached him. Close cover officers directed arresting officers towards the tire of a vehicle and uninvolved female standing on the sidewalk. Officers ultimately located a black colored cellophane bag and placed it on the hood of the adjacent vehicle. Officers searched the bag discarded by REYES MARTINEZ and located additional suspected fentanyl, which was also seized as evidence.

16. An officer conducted search incident to arrest of REYES MARTINEZ's person, which resulted in the discovery and seizure of an approximately $69.00 of United States Currency including the marked City funds ($20.00) used by the UC to purchase the suspected fentanyl. Additionally, officers located a small digital scale that was covered in a white colored powder consistent with drug residue and a cellphone. REYES MARTINEZ was transported to Tenderloin Police Station before being booked into custody at San Francisco County Jail.

17. The suspected fentanyl purchased by the UC was later weighed and tested utilizing the TruNarc Device Analyzer. The suspected fentanyl weighed 1.6 grams gross and tested presumptive for the presence of fentanyl. The suspected fentanyl located in the bag thrown by REYES MARTINEZ weighed 28.3 grams gross and tested presumptive positive for the presence of fentanyl. The suspected fentanyl dropped by REYES MARTINEZ weighed 1.4 grams gross and tested presumptive positive for the presence of fentanyl.

18. The suspected narcotics were retained as evidence and booked accordingly.

19. Because REYES MARTINEZ possessed a usable quantity of suspected fentanyl that was sold to an undercover police officer, was later determined to possess the money used by

the UC, a large quantity of additional suspected fentanyl and was located/arrested in a high crime area known for narcotics sales, I believe that REYES MARTINEZ distributed fentanyl.

**CONCLUSION**

20. Based on the information set forth in this Affidavit, there is probable cause to believe that on or about September 23, 2026, in the Northern District of California, REYES MARTINEZ committed a violation of federal law in that he distributed a mixture or substance containing fentanyl, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C).

21. Accordingly, I respectfully request that the Court issue a criminal complaint and arrest warrant for Hector REYES MARTINEZ.

/s/

JEFFREY T. OSPITAL
Task Force Officer
Drug Enforcement Administration

Sworn to before me over the telephone and signed by me pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 15th day of October 2026.

HONORABLE ALEX G. TSE
United States Magistrate Judge